E-FILED
Friday, 23 October, 2009 02:31:44 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

LEVAIL GIVENS,
Plaintiff,

v. 07-2229

ROGER E. WALKER, JR., BASHIR AHMED AMEJI, MARSHALL KEYS, MARVIN COOLEY, and CHAPLAIN COLEMAN,
Defendants.

MEMORANDUM OPINION AND ORDER

Before the court are the defendants, LAMAR COLEMAN, MARVIN COOLEY, MARCIA KEYS (sued as Marshall Keys), and ROGER E. WALKER, JR.'s summary judgment motion [58] and the plaintiff's response [76].

Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge

may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

Background

Levail Givens, an Illinois prisoner, brings this civil rights lawsuit for constitutional violations alleged to have occurred at Danville Correctional Center ("Danville"). As his lawsuit relates to the above-named defendants, Givens claims that: (I) the defendants, Keys and Walker subjected him to inhumane conditions of confinement by distributing excessive amounts of soy; (ii) the defendants, Cooley and Walker subjected Givens to inhumane conditions of confinement by issuing tennis shoes that were not minimally adequate to protect him from the cold; (iii) the defendants, Coleman and Walker violated the First Amendment's Free Exercise Clause by preventing him from obtaining Hebrew Israelite religious services in the absence of a religious program volunteer; (iv) the defendants, Keys and Walker retaliated against Givens for past grievances; and (v) the defendant, Walker was deliberately indifferent to Givens's serious medical needs. *See* the plaintiff's complaint [1].

The defendants move for summary judgment on the following grounds. First, there is insufficient evidence to find that the defendants, Keys and Walker knowingly provided Givens with a nutritionally inadequate diet. Second, the restrictions on Givens's right to freely exercise his religion were reasonably related to legitimate penological interests. Third, Givens was provided clothing that is minimally adequate for the seasons. Fourth, the defendants, Keys and Walker did not retaliate against Givens. Fifth, the defendant, Walker was not deliberately indifferent to Givens's serious medical needs. Sixth, the defendants are entitled to qualified immunity.

Undisputed Material Facts[1]

[1]The defendants' exhibits are attached to their memorandum [59]. Further, the plaintiff disputes material facts 14, 15, 16 (in part), 17 (in part), 18 (in part), 19, 22, 25, 26, 28-31, 33 - 36 and 39; however, the plaintiff fails to support each such claim of disputed fact with evidentiary documentation referenced by specific page as required by Local Rule 7.1(D)(2)(b)(2). Further, the plaintiff lists several additional undisputed material facts, but does not support most of them with evidentiary documentation referenced by specific page as required by Local Rule 7.1(D)(4) and further most are conclusionary assertions. The few that were conceded and that the court can consider are listed in the undisputed facts. Furthermore, some of his facts are that other inmates will testify .... See Additional Material Facts listed in the plaintiff's response [76]. The court cannot consider what the plaintiff states other persons would testify to at a future date.

1. Givens has been incarcerated at Danville since August 9, 2006. (Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 61, line 13 - p. 61, line 15.)
2. The defendant, Keys has been employed as the corrections food service manager at Danville for all times relevant to this lawsuit. (Defs.' Ex. C; Keys Aff., ¶ 1.)
3. The defendant, Cooley has been employed as the correctional supply supervisor at Danville for all times relevant to this lawsuit. (Defs.' Ex. B; Cooley Aff., ¶ 1.)
4. The defendant, Coleman served as the acting chaplain at Danville from November 1, 2006 until August 19, 2007. (Defs.' Ex. A; Coleman Aff., ¶ 1.)
5. The defendant, Coleman is no longer authorized to perform the duties of a facility chaplain at Danville. (Defs.' Ex. A; Coleman Aff., ¶ 1.)
6. Prior to 2002, the Department decided that, due to budgetary restraints and the rising costs associated with running the Department, only inmates who had outside work assignments at Danville would be issued state work boots. (Defs.' Ex. B; Cooley Aff., ¶ 3.)
7. On or about December 11, 2001, then-Warden Blair J. Leibach issued a memorandum (Inmate Bulletin 01-058) to the inmate population at Danville which provides, in part, that "[a]ll newly admitted inmates shall be issued state tennis shoes until assignment to one of the [following] job categories": runner, grounds crews, floor crews, industries, dietary, warehouse, maintenance, and Paris work camp. (Defs.' Ex. B; Cooley Aff., ¶ 4.)
8. Inmate Bulletin 01-058, which remains in effect, further provides that inmates assigned to any of the aforementioned job assignments will be issued state work boots. (Defs.' Ex. B; Cooley Aff., ¶ 4.)
9. On August 10, 2006, Givens was issued a variety of clothing items as provided by Institutional Directive 05.02.03DP. (Defs.' Ex. B; Cooley Aff., ¶ 5.)
10. Inmates are minimally provided with the following clothing items: three sets of pants, three shirts, three pairs of underwear, one pair of tennis shoes, one stocking cap, three pairs of socks, three t-shirts, two towels, one face cloth, and one winter jacket. (Defs.' Ex. B; Cooley Aff., ¶ 5; Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 61, line 16 - p. 62, line 8.)
11. Inmates may purchase additional clothing items, including state work boots and other foot apparel, through commissary at Danville. (Defs.' Ex. B; Cooley Aff., ¶ 6; Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 70, line 7 - p. 70, line 20.)
12. Givens has obtained additional shoes from alternative sources. (Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 70, line 21 - p. 71, line 14.)
13. Givens was not issued a pair of state work boots because he was not assigned to any of the qualifying job categories. (Defs.' Ex. B; Cooley Aff., ¶ 5; Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 63, line 19 - p. 63, line 23.)
14. In the defendant, Cooley's opinion, the clothing issued to Givens would not cause an increased risk to his health and safety because it is minimally adequate for the seasons. (Defs.' Ex. B; Cooley Aff., ¶ 7.)
15. Givens complains that his feet become cold in winter months because he suffers from a condition that causes his feet to sweat excessively. (Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 66, line 2 - p. 66, line 18.)
16. To the defendant, Cooley's knowledge, Givens does not suffer from any medical condition that would require him to wear state work boots, nor is Cooley aware of any

authorization from a medical professional that allowed Givens to receive state work boots absent a qualifying job assignment. (Defs.' Ex. B; Cooley Aff., ¶ 8.)

17. According to the medical records attached to Givens's complaint, he did not present any cold-related illnesses such as hypothermia or frostbite during the relevant time period. (Ct. Doc. #1, medical records attached to complaint.)

18. Givens may wear multiple pairs of socks underneath his tennis shoes to keep warm. (Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 62, line 22 - p. 63, line 4.)

19. Committed persons shall be provided reasonable opportunities to pursue their religious beliefs and practices subject to concerns regarding security, safety, rehabilitation, institutional order, space, and resources. (Defs.' Ex. A; Coleman Aff., ¶ 3.)

20. Religious activities for which religious program volunteers or chaplains of that particular faith are unavailable on a permanent or protracted basis may be permitted if the conditions set forth in Ill. Admin. Code tit. 20, § 425.60(f) are met. (Defs.' Ex. A; Coleman Aff., ¶ 4.)

21. During Coleman's tenure as acting chaplain at Danville, he continued the religious services that had already been put in place by the former chaplain of the facility because it was Coleman's understanding that those religious services already satisfied the conditions outlined in Departmental rules. (Defs.' Ex. A; Coleman Aff., ¶ 5.)

22. To Coleman's knowledge, Givens did not satisfy any of the conditions set forth in Departmental rules for obtaining Hebrew Israelite religious activities before or during Coleman's tenure as acting chaplain. (Defs.' Ex. A; Coleman Aff., ¶ 6.)

23. A religious program volunteer was not available to conduct Hebrew Israelite religious services at Danville. (Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 76, line 5 - p. 76, line 11.)

24. Givens was permitted to keep a copy of his holy book in his cell during Coleman's tenure as acting chaplain. (Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 79, line 13 - p. 80, line 2.)

25. Coleman did not seek, nor did he receive, instruction from the defendant, Walker concerning the accommodation of religious services during Coleman's tenure as acting chaplain at Danville. (Defs.' Ex. A; Coleman Aff., ¶ 6.)

26. Walker is not personally involved in the accommodation of religious services at Danville. (Defs.' Ex. A; Coleman Aff., ¶ 7.)

27. The defendant, Keys is not a licensed dietician nutritionist, nor is she registered by the Commission on Dietetic Registration. (Defs.' Ex. C; Keys Aff., ¶ 1.)

28. Keys is not responsible for determining portion sizes and serving sizes of food items served at Danville, nor is she responsible for creating the menus which are distributed at Danville. (Defs.' Ex. C; Keys Aff., ¶ 5.)

29. Menus, portions, and serving sizes of food items are determined by the food service administrator, Suzanne Griswold. (Defs.' Ex. C; Keys Aff., ¶ 5.)

30. Keys is responsible for ensuring that the menus issued by Suzanne Griswold are followed as closely as possible by serving the food items and portion sizes as specified in the menus. (Defs.' Ex. C; Keys Aff., ¶ 3.)

31. To Keys's knowledge, all meals served to the inmate population at Danville are prepared in the kitchen by inmates under the supervision of the kitchen correctional food service

supervisor(s), and in accordance with Department rules and regulations. (Defs.' Ex. C; Keys Aff., ¶ 4.)

32. Substitutions of food items that meet necessary dietary restrictions become necessary on occasion due to the unavailability of certain food items. (Defs.' Ex. C; Keys Aff., ¶ 4.)
33. Keys is not personally aware of any instances where dietary staff at Danville intentionally withheld portions of food items called for by the menu without providing an appropriate substitute. (Defs.' Ex. C; Keys Aff., ¶ 5.)
34. Keys is not aware of any specific research studies regarding dangers of soy consumption, nor is she aware of any particular health issues associated with over consumption of soy. (Defs.' Ex. C; Keys Aff., ¶ 6.)
35. Keys has not been instructed by Suzanne Griswold, or any other Department official, to discontinue or decrease the distribution of soy/soy-based products. (Defs.' Ex. C; Keys Aff., ¶ 6.)
36. Walker is not personally involved in the preparation and/or service of meals at Danville. (Defs.' Ex. C; Keys Aff., ¶ 7.)
37. The Department's ultimate grievance appeal body, the administrative review board, assists Walker by reviewing inmate correspondence and grievance appeals. (Defs.' Ex. D; Miller Aff., ¶ 7.)
38. Walker did not receive, review, or respond to any of Givens's grievances which pertain to the issues raised in this lawsuit. (Defs.' Ex. D; Miller Aff., ¶¶ 10-14.)
39. An administrative designee, Terri Anderson, reviewed and signed Givens's grievances on Walker's behalf. (Defs.' Ex. D; Miller Aff., ¶¶ 10-14.)
40. The defendants have no knowledge of any attempts to retaliate against Givens for past lawsuits or grievances. (Defs.' Ex. C; Keys Aff., ¶ 8; )
41. Givens alleges that an inmate dietary worker confronted, and presumably intimidated, Givens at Defendant Keys's request. (Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 85, line 23 - p. 87, line 22.)
42. Givens alleges that a nurse became hostile toward him because the nurse was related to Defendant Keys. (Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 87, line 22 - p. 89, line 4.)

41\. Givens does not claim that Coleman and Cooley retaliated against him. (Defs.' Ex. E; Givens Dep. Trans. Nov. 19, 2008, p. 93, line 4 - p. 93, line 10.)

42\. Plaintiff grieved the diet served at Danville Correctional Center.

43\. It is policy to provide a menu that meets or exceeds the dietary allowances as recommended by the National Academy of Sciences. Further, variety shall be provided without changing the planned nutritional content of meals.

Discussion and Conclusion

Inmates have a constitutional right to an adequate diet. *Antonelli v. Sheehan*, 81 F.3d 1422, 1432 (7th Cir. 1996). "The state must provide an inmate with a healthy, habitable environment. This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). There is

insufficient evidence to find that the defendants, Keys and Walker knowingly provided Givens with a nutritionally inadequate diet.

Defendant Keys

In this case, Givens attributes many of his purported medical problems, including enlarged breasts, to a prison diet which, he alleges, contains excessive amounts of soy. *See* plaintiff's complaint [1]. Keys is not responsible for determining portion sizes and serving sizes of food items at Danville, nor is she responsible for creating the menus which are distributed at Danville. Rather, menus, portions, and serving sizes of food items are determined by the food service administrator, Suzanne Griswold. Keys is responsible for ensuring that the menus issued by Suzanne Griswold are followed as closely as possible by serving the food items and portion sizes as specified in the menus. To Keys's knowledge, all meals served to the inmate population are prepared in accordance with Departmental rules and regulations. Moreover, Defendant Keys is not personally aware of any instances where dietary staff at Danville intentionally withheld portions of food items called for by the menu without providing an appropriate substitute. Keys is not aware of any specific research studies regarding dangers of soy consumption, nor is she aware of any particular health issues associated with over-consumption of soy. More important, Keys has not been instructed by Suzanne Griswold, or any other Department official, to discontinue or decrease the distribution of soy/soy-based products. Further, there is no basis to conclude that Givens's purported medical problems are attributable to his diet, as opposed to other sources such as his various medical conditions. *See* the plaintiff's complaint [1]. Accordingly, Keys is granted summary judgment on this claim.

Defendant Walker

Defendants in a suit brought pursuant to 42 U.S.C. § 1983 can only be held liable for their individual wrongdoing. *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985). "Section 1983 will not support a claim based on a respondeat superior theory of liability." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). A supervisory official can be liable only for his own misconduct, not for the misconduct of individuals under his supervision. *Duckworth*, 780 F.2d at 650. To be personally involved, defendants must act (or fail to act) with a deliberate or reckless disregard of the plaintiff's constitutional rights or must direct or knowingly consent to the conduct alleged to constitute the violation. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985); *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Walker is not personally involved in the preparation and/or service of meals at Danville. Moreover, he did not receive, review, or respond to Given's grievance in which he complained about the distribution of soy/soy-based products at Danville. Accordingly, Walker is granted summary judgment as to Givens's claims related to the adequacy of his diet.

Further, Keys and Walker are entitled to qualified immunity. The doctrine of qualified immunity shields government officials from liability for civil damages on account of their performance of discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court required to rule upon qualified immunity of a government official must first determine whether a favorable view of the plaintiff's alleged facts shows that the official's conduct violated a constitutional right, and, if so, to determine whether the applicable constitutional standards were clearly established at the time the events took place. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996). The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 202. This inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition" and must be "particularized" based on the facts confronting the officer. *Brosseau v. Haugen*, 543 U.S. 194 (2004); *Anderson v. Creighton*, 483 U.S. 635 (1987). Government officials may be protected from liability for objectively reasonable decisions, even if the decision is later determined to be wrong. *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1998).

In the instant claim, to the extent that Keys and Walker's reliance on the menus distributed by the food service administrator in the absence of any evidence to suggest that Givens's purported medical problems are attributable to his diet violates Givens's civil rights, a ruling against Keys and Walker would represent an announcement of law of which they could not have been aware. Accordingly, Keys and Walker are entitled to qualified immunity.

The restrictions on Givens's right to freely exercise his religion were reasonably related to legitimate penological interests. To constitute a violation of the Free Exercise Clause, the government must place a "substantial burden on the observation of a central religious belief or practice." *Wisconsin v. Yoder*, 406 U.S. 205, 220-21 (1972). It is well established that inmates have the right to freely exercise their religious beliefs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). (Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."). However, "[a] prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion." *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996). A prison may restrict an inmate's ability to adhere absolutely to a particular tenet of his religion if those restrictions are reasonably related to legitimate penological interests. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Defendant Coleman

The restrictions imposed on Givens's ability to obtain Hebrew Israelite religious services in the absence of a religious program volunteer satisfy the first prong of the Turner test because they were reasonably related to legitimate penological interests. The provision of religious services in prison are subject to legitimate concerns regarding security, safety, rehabilitation, institutional order, space, and resources. *See Mustafa Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991)(both security and economic concerns are legitimate penological demands). Givens acknowledges that a religious program volunteer was not available to conduct Hebrew Israelite religious services at Danville. Prison security could be jeopardized by granting inmates positions of authority as religious leaders over other inmates. *Hadi v. Horn*, 830 F.2d 779, 784 (7th Cir. 1987). In addition, religious services led by inmates might be used for gang meetings and for the dissemination of views that interfered with order in the prison. *Hadi*, 830 F.2d at 784. For these reasons, the Seventh Circuit has held that the cancellation of religious services for lack of a chaplain served a legitimate government interest. *Id*. at 785.

The remaining prongs of the Turner test are easily satisfied because Givens failed to avail himself of the alternative means of obtaining Hebrew Israelite services in the absence of a religious program volunteer. Religious activities for which religious program volunteers or chaplains of that particular faith are unavailable may be permitted if certain conditions are satisfied. Ill. Admin. Code tit. 20, § 425.60(f). First, the committed persons must submit written verification that they attempted to locate and secure the services of religious leaders or faith representatives from the community and that such persons refused or were not approved to conduct religious activities. § 425.60(f). Second, there must be staff available to attend and supervise the religious activity. Id. Third, the committed persons must submit written verification that attendance at existing religious activities does not satisfy the recognized tenets of their faith. Id. Fourth, a chaplain, faith representative, or recognized religious leader of the faith group must agree in writing to provide general oversight and guidance of the religious activity. Id. Fifth, the religious practice advisory board must recommend approval. Id. Finally, the committed person must submit a copy of any proposed sermon or doctrinal interpretation for review and approval prior to delivery, based on safety and security concerns. Id. To Coleman's knowledge, Givens did not satisfy any of the requisite conditions for obtaining Hebrew Israelite services before or during Defendant Coleman's tenure as acting chaplain. In light of Givens's failure to avail himself of the alternative means of obtaining Hebrew Israelite services in the absence of a religious program volunteer, there is no basis for a rational jury to find that Coleman violated the First Amendment's Free Exercise Clause.

Defendant Walker

Meanwhile, Defendant Walker lacks the requisite personal involvement to be held liable as to Givens's free exercise claim. Defendant Coleman did not seek, nor did he receive, instruction from Defendant Walker concerning the accommodation of religious services during Defendant Coleman's tenure as acting chaplain at Danville. Indeed, Defendant Walker is not personally involved in the accommodation of religious services at Danville. Moreover, Defendant Walker did not receive, review, or respond to Givens's grievance in which he

complained about the lack of Hebrew Israelite faith services at Danville. *See* Defs.' Ex. D; Miller Aff., ¶ 14, Ex. 5.) Because a supervisory official can be liable only for his own misconduct, not for the misconduct of individuals under his supervision, Defendant Walker is entitled to summary judgment as to Givens's free exercise claim.

Based on the foregoing, Givens is not entitled to injunctive relief with respect to his free exercise claims. A federal court does not have jurisdiction to grant injunctive relief in the absence of an ongoing violation of federal law. *Id.*

Further Givens and Walker are entitled to qualified immunity. To the extent that requiring inmates to satisfy certain conditions to ensure safety and security before authorizing the provision of Hebrew Israelite services in the absence of a religious program volunteer violates the First Amendment's Free Exercise Clause, a ruling against Defendants Coleman and Walker would represent an announcement of law of which they could not have been aware. Therefore, Defendants Coleman and Walker are entitled to qualified immunity.

The court finds that Givens was provided clothing that is minimally adequate for the seasons. The Eighth Amendment guarantees the right to be free from cruel and unusual punishment. Prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). The Eighth Amendment is not, however, a basis for broad prison reform. It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). A constitutional violation occurs only where the deprivation alleged is, objectively, "sufficiently serious," and the official has acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992) (citations omitted). Prisoners have a right to protection from extreme cold. *Antonelli*, 81 F.3d at 1433. Prison officials are deliberately indifferent to deprivations suffered by inmates if they have knowledge of the condition but refuse to take steps to correct it. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997).

Defendant Cooley

Givens's claim against Defendant Cooley does not amount to cruel and unusual punishment because Givens was provided clothing that is minimally adequate for the seasons. Inmates are provided with the following clothing items: three sets of pants, three shirts, three pairs of underwear, one pair of tennis shoes, one stocking cap, three pairs of socks, three t-shirts, two towels, one face cloth, and one winter jacket. Givens was not issued a pair of state work boots because he was not assigned to a qualifying job category. Only those inmates who have outside work assignments at Danville are issued state work boots due to budgetary constraints. Givens complains that his feet became cold in winter months because he suffers from a condition that causes his feet to sweat excessively. Notably, Givens's medical records from the relevant

time period do not reflect that he presented any cold-related illnesses such as hypothermia or frostbite. However, Defendant Cooley (a nonmedical professional) is not aware of any authorization from a medical professional that allowed Givens to receive state work boots absent a qualifying job assignment. In Defendant Cooley's opinion, the clothing issued to Givens would not cause an increased risk to his health and safety because it is minimally adequate for the seasons. Moreover, Givens acknowledges that he has alternative means of keeping warm, including obtaining additional shoes from other sources and wearing multiple pairs of socks underneath his tennis shoes. Finally, Givens retains the right to purchase additional clothing items, including state work boots and other foot apparel, through commissary at Danville. Accordingly, Defendant Cooley is entitled to summary judgment.

Defendant Walker

Based on the foregoing paragraph, Defendant Walker is entitled to summary judgment. Furthermore, Defendant Walker lacks the requisite personal involvement to be held liable as to Givens's conditions of confinement claim. The policies that control distribution of work boots only to those inmates with outdoors work assignments were created by the chief administrative officer(s) at Danville. Moreover, Defendant Walker did not receive, review, or respond to Givens's grievance in which he complained about the shoes issued at Danville. (*See* Defs.' Ex. D; Miller Aff., ¶ 13, Ex. 4.) Because a supervisory official can be liable only for his own misconduct, not for the misconduct of individuals under his supervision, Defendant Walker is entitled to summary judgment as to Givens's conditions of confinement claim.

Further, in *Mays v. Snyder*, 2007 WL 853964, *14 (C.D. Ill. 2007), summary judgment was awarded in favor of Defendant Cooley on an identical claim that the clothing issued to inmates at Danville was not minimally adequate and violated the Eighth Amendment. Therefore, if the court now determines that the clothing distributed at Danville violates the Eighth Amendment, a ruling against Defendants Cooley and Walker would represent an announcement of new law. Because the law did not put Defendants Cooley and Walker on notice that their conduct was clearly unlawful, they are entitled to qualified immunity.

Defendants Keys and Walker did not retaliate against Givens[2]. An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), *citing Mt. Healthy City School Dist. Board of Education v. Doye*, 429 U.S. 274, 283-84, (1997). Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). A plaintiff must prove (1) that he engaged in a protected conduct; and (2) that he was retaliated against for engaging in this protected conduct. *DeWalt*, 224 F.3d at 618. The ultimate inquiry is whether the allegedly retaliatory events would have transpired differently absent the retaliatory motive. *Babcock*, 102 F.3d at 275. It will not suffice

[2]Givens does not claim that Defendants Coleman or Cooley retaliated against him.

for the plaintiff to merely state that retaliation played a substantial part in the defendant's actions. *Id*. at 275.

Defendant Keys

Givens's contention that Defendants Keys retaliated against him is purely speculative and contradicted by sworn testimony. In his deposition, Givens described only two instances where he alleges that Defendant Keys retaliated against him. In the first instance, Givens alleges that an inmate dietary worker confronted, and presumably intimidated, Givens at Defendant Keys's request. (Defs.' Ex. E; Givens's Dep. Trans dated Nov. 19, 2008, p. 85, line 23 - p. 87, line 22.) In the second instance, Givens alleges that a nurse became hostile toward him because the nurse was related to Defendant Keys. (Defs.' Ex. E; Givens Dep. Trans. dated Nov. 19, 2008, p. 87, line 22 - p. 89, line 4.) Neither instance resulted in any negative actions taken toward Givens. (Defs.' Ex. E; Givens's Dep. Trans. dated Nov. 19, 2008, p. 85, line 23 -p. 89, line 4.) While Givens's allegations may, if true, indicate an unprofessional work ethic, they do not give rise to the level of a constitutional violation. *See DeWalt*, 224 F.3d at 612 (simple verbal harassment does not constitute cruel and unusual punishment, deprive a person of a protected liberty interest, or deny a person equal protection of the laws); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (crude and derogatory language does not rise to the level of a constitutional claim). In neither instance, does the plaintiff allege that the other inmate or the nurse told him that Defendant Keys asked them to treat the plaintiff in the manner that they did. Further, these allegations are corroborated only by the plaintiff's self-serving statements. Presumably, the plaintiff could have supported these allegations with affidavits of the inmate who confronted and intimated him and the nurse who became hostile toward him, however, he did not. There is insufficient evidence to contradict Defendant Keys's sworn statement that she has no knowledge of any attempts to retaliate against Givens for past lawsuits or grievances.

Defendant Walker

Likewise, there is insufficient evidence for a rational jury to find that Defendant Walker retaliated against Givens. Givens only claim of retaliation against Defendant Walker is that Givens's grievances were ultimately denied. (Defs.' Ex. E; Givens's Dep. Trans. dated Nov. 19, 2008, p. 93, line 11 - p. 94, line 7.) However, Defendant Walker did not receive, review, or respond to any of Givens's grievances which pertain to the issues raised in this lawsuit. Rather, the Department's ultimate grievance appeal body, the administrative review board, assists Defendant Walker by reviewing inmate correspondence and grievance appeals. Accordingly, Defendants Keys and Walker are entitled to judgment in their favor as to Givens's retaliation claims.

Defendant Walker was not deliberately indifferent to Givens's serious medical needs. The Supreme Court has interpreted the Eighth Amendment as requiring a minimum standard for the treatment of inmates by prison officials: the prison conditions must not, among other things, involve the "wanton and unnecessary infliction of pain." *Rhodes*, 452 U.S. at 347. Prison officials violate the proscription against cruel and unusual punishment when they display

deliberate indifference to a prisoner's serious medical condition. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle*, 429 U.S. at 106. Although a prisoner has the right to receive medical care, he does not have the right to determine the type and scope of care he personally desires. *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (*citing Lawrence v. Ragen*, 323 F.2d 410, 412 (7th Cir. 1963)). Claims for deliberate indifference to a serious medical need contain both an objective and a subjective component. Under the objective component, a prisoner must demonstrate that his need is "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Under the subjective component, the prisoner must demonstrate that the official acted with a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (*quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In other words, a prison official must act or fail to act despite his knowledge of a substantial risk of serious harm. *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999); see also *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (prisoner must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference).

In this case, Givens cannot prevail against Defendant Walker on his claim for deliberate indifference because there is no basis for a rational jury to find that Defendant Walker acted with a sufficiently culpable state of mind. The basis for Givens's claim that Defendant Walker is liable for deliberate indifference to Givens's medical needs is that his grievances were ultimately denied. (Defs.' Ex. E; Givens's Dep. Trans. dated Nov. 19, 2008, p. 93, line 11 - p. 94, line 7.) Defendant Walker did not receive, review, or respond to Givens's grievance in which he complained about the medical treatment offered by Dr. Ameji. (Defs.' Ex. D; Miller Aff., ¶¶ 10-11, Ex. 1-2.) Regardless, the Seventh Circuit has held that nonmedical prison officials cannot be held "deliberately indifferent simply because [they] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Johnson v. Doughty*, 433 F.3d 1001,1011 (*quoting Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)). Moreover, even to the extent that prison officials failed to get back to the inmate after learning of his complaints, the failure to do so evinced only a negligent handling of the complaint and not deliberate indifference. *Doughty*, 433 F.3d at 1012. Therefore, even if Defendant Walker (a nonmedical professional) failed to respond to Givens's medical complaints, he cannot be held deliberately indifferent to Givens's serious medical needs because Givens was already being treated by a prison doctor. Accordingly, Defendant Walker is granted summary judgment on this claim.

It is therefore ordered:

1. Pursuant to Fed. R. Civ. Pro. Rule 56(c), the defendants' motion for summary judgment is granted [58]. The clerk of the court is directed to enter judgment in favor of the moving defendants and against the plaintiff at the close of this case. Parties to bear their own costs.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be nonmeritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this 23rd day of October 2009

/s/ David G. Bernthal

David G. Bernthal
United States Magistrate Judge